UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

MELVIN M. KALATA,

       Debtor.

Case No. 07-21710

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION
_____

This case came before the court on the standing chapter 13 trustee's objection to confirmation of the debtor's proposed plan. The trustee contended the plan did not provide all projected disposable income for the above median income debtor over the applicable commitment period of five years. The trustee also asserted that the plan was not proposed in good faith.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

The facts of the case are undisputed. The debtor filed his petition for relief March 15, 2007, which is after the effective date of the Bankruptcy Abuse Prevention and Consumer Act of 2005. On the same day, the debtor filed his schedules, plan, and Official Form B22C – Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. The debtor amended his Form B22C on November 27, 2007. The debtor scheduled unsecured debt of approximately $81,062.08. His plan proposed to pay $256.64 weekly for 12 months, with payments reduced to $194.76 per week beginning in the thirteenth month. Total

plan payments for five years were projected to be $53,526.60. The plan further provided for the debtor to sell his 1991 Chevrolet truck for the best price possible and pay the proceeds into the plan. Most relevant to the issue at hand, the plan also provided for the debtor to surrender his residence to the secured creditor. The automatic stay was lifted with regard to the real property postpetition, and the secured creditor's claim was withdrawn. The debtor vacated the residence and temporarily resided with his sister in order to reduce expenses. The reduction in plan payments after the first year was due to the assumption that the debtor would find an apartment and incur higher rent during the last four years of the plan.

When a trustee objects to confirmation, a plan must pledge all projected disposable income during the applicable commitment period. 11 U.S.C. § 1325(b)(1)(B). The debtor's Form B22C shows gross monthly wages of $4,332.91, annualized at $51,994.92. Pursuant to the information contained in the debtor's Form B22C, the debtor is an "above median debtor" and as such he is required to calculate disposable income pursuant to 11 U.S.C. § 1325(b)(3) and, accordingly, must use the deductions set forth in 11 U.S.C. § 707(b)(2) rather than his actual expenses set forth on Schedule J. His original Form B22C revealed that he had monthly disposable income of $720.91 and his amended Form B22C revealed that he had a negative monthly disposable income of ($143.89). In contrast, his Schedule I and Schedule J reflect monthly net income of $1,121.11. Although the debtor claims his earnings have decreased due to loss of overtime, the reduction in monthly disposable income on the amended Form B22C was the result of increased deductions.

The trustee objected to the debtor's plan because of one specific deduction the debtor

2

claimed on his Form B22C. The debtor took a $979.91 deduction on Line 47 of his amended[1] Form B22C for "future payments on secured claims" for his residence. Based on the surrender of the property, the trustee contends the deduction on the means test for payments which will not be made is improper. According to the trustee, the determination of disposable income must be forward looking for a chapter 13 plan to appropriately reflect payments that should be made to creditors.

The trustee further argues that the plan does not meet the good faith standard because the deduction of surrendered property on the means test allows the debtor to reduce his disposable income well below what he is actually able to pay. Therefore, the trustee's position is that the plan is not fundamentally fair to unsecured creditors.

The debtor argues that the language of the code is unambiguous and requires that secured debt payments such as the debtor's mortgage which, as of the date of filing, were due for the following 60 months, must be deducted from Form B22C, and the resulting amount is all that must be paid to unsecured creditors.

DISCUSSION

Because the debtor's plan does not provide for full payment of unsecured claims under section 1325(b)(1)(A), the debtor is not entitled to confirmation of his plan unless it complies with section 1325(b)(1)(B) and provides that all of his "projected disposable income" to be received in the "applicable commitment period" will be applied to make payments to unsecured creditors.

---

[1] The debtor took the same deduction on his original Form B22C, as well as an additional deduction in the amount of $171.22 on Line 48 for "other payments on secured claims." This additional deduction was omitted from the debtor's amended Form B22C.

3

"Projected disposable income" is not a defined term in the Bankruptcy Code. However, "disposable income" means "current monthly income" received by the debtor, less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of a debtor. 11 U.S.C. § 1325(b)(2). "Current monthly income" is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on [ ] the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C. § 101(10A). The trustee has no quarrel with the debtor's calculation of his income.

The amounts to be deducted from the debtor's current monthly income in order to arrive at his "disposable income" under section 1325(b)(2) must be determined as provided in section 1325(b)(3). Pursuant to section 1325(b)(3), expense deductions for the calculation of disposable income are determined pursuant to section 707(b)(2)(A)(ii), (iii), and (iv). Relevant to this issue is section 707(b)(2)(A)(iii), which provides in part:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition....

11 U.S.C. § 707(b)(2)(A)(iii).

The debtor argues that since he had secured debt owing to the mortgage lender listed on Line 47 of Form B22C when this case was filed, the payment listed on Line 47 was "scheduled as contractually due to secured creditors" as described in section 707(b)(2)(A)(iii) and therefore was properly included as a deduction in arriving at his "monthly disposable income" on Line 58 of From B22C. Once Line 58 is determined according to the statutory formula, this is all the debtor

4

has to pay unsecured creditors over the life of the plan, regardless of ability to pay. Furthermore, the statute does not condition the calculation of monthly disposable income on whether the collateral is retained by the debtor after the case is commenced. Amounts contractually due are distinguishable from debts actually to be paid. So, if the means test contained in section 707(b)(2) is a "backward looking test" designed to measure the debtor's financial condition at the time of filing, the surrender of collateral postpetition would be inconsequential. *Cf. In re Nockerts*, 357 B.R. 497, 504 (Bankr. E.D. Wis. 2006) (means test in a chapter 7 case described as a "snapshot" on the petition date rather than an evolving progress report on the debtor's finances).

In the context of a chapter 7 case, the overwhelming majority of courts have so held. *E.g., In re Kogler*, 368 B.R. 785 (Bankr. W.D. Wis. 2007) (chapter 7 debtors could deduct monthly payments on mortgage and vehicle loans from their current monthly income in completing means test, despite stated intention to surrender home and vehicle); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2007) (chapter 7 debtors who had not yet surrendered their homestead on the petition date were entitled to a deduction for their monthly mortgage payments, even though they did not intend to reaffirm the mortgage debts); *In re Randall*, 358 B.R. 360 (Bankr. N.D. Ill. 2006) (chapter 7 debtor was entitled to deduct amount due under her contracts on petition date for her secured debt, regardless of whether she intended to redeem, reaffirm or surrender the property securing that debt); *but see In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007) (in performing means test calculation, chapter 7 debtors could not deduct the payments they were contractually obligated to make, but would not in fact be making, on residence and vehicle).

5

The majority has generally found that in chapter 7 cases, amounts "scheduled as contractually due" in section 707(b)(2)(A)(iii)(I) refers to the amounts due as "provided for by" the underlying contract, and that the means test calculations are intended to represent a "snapshot" as of the petition date, examined without regard to the debtor's future intentions. *Burden*, 380 B.R. at 200. Nevertheless, as several courts have noted, the timing of the application of section 707(b)(2)(A) and (B) may be different in a chapter 13 case. *See In re Spurgeon*, 378 B.R. 197, 201 (Bankr. E.D. Tenn. 2007); *In re McPherson*, 350 B.R. 38, 44-45 (Bankr. W.D. Va. 2006); *In re Edmunds*, 350 B.R. 636, 644 (Bankr. D. S.C. 2006).

One such court, In re *McGillis*, 370 B.R. 720, 730 (Bankr. W.D. Mich. 2007), found that while section 707(b)(2)(A)(iii) permitted debtors to deduct expenses for a surrendered timeshare and avoided second mortgage, section 1325(b) ultimately controlled the determination of disposable income for purposes of plan confirmation. Because that section permitted debtors to deduct only those expenses that were reasonably necessary for their future support and maintenance, "phantom payments" for the timeshare and second mortgage did not meet this criterion, and confirmation of the plan was denied.

The deduction for surrendered collateral has been disallowed on other grounds in other cases. As the *Spurgeon* court explained, when either the lifting of the automatic stay or confirmation of the proposed plan will relieve the debtor from the need to make future payments to a secured creditor, the amounts that would otherwise be due under the contract after the debtor filed the chapter 13 case will no longer be scheduled as contractually due to a secured creditor. *Spurgeon*, 378 B.R. at 200-01. Thus those amounts will no longer be within the terms of the deduction statute. *Id*. at 201. The court noted:

6

> For this reasoning to have effect, however, the court must be able to apply the deduction statute to the facts at the time of confirmation or that will result from confirmation. In this regard, the relevant chapter 13 statute refers to the debtor's *projected* disposable income. 11 U.S.C. § 1325(b)(1). Even if the deduction is correct for calculating disposable income under Form B22C, the deduction may be incorrect for calculating projected disposable income.

*Id*. (emphasis in original). Similarly, the bankruptcy court in *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006), reasoned:

> The term "contractually due" ... does not carry the same meaning in a chapter 13 case as in a chapter 7 case. The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.

*Id*. at 46.

Likewise, the chapter 13 debtors in *In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006), claimed a deduction for payments on debts secured by collateral which they proposed to return to the secured parties. Because "projected disposable income" and a chapter 13 plan are both "forward looking" concepts, the court concluded that the term "scheduled" in section 707(b)(2)(A)(iii) also contemplates a forward looking approach:

> That is, one schedules something which one expects to take place in the future and not an event which one plans to avoid. The terms "scheduled as contractually due" should be interpreted in a way which is consistent with the underlying Chapter 13 Plan as well as the text of the Code. As it is the debtor's plan to surrender certain collateral, payments which will be avoided should not be said to be scheduled within the meaning of § 707(b)(2)(A)(iii).

*Id*. at 613-14. A similar approach was taken by the court in *In re Renicker*, 342 B.R. 304, 309 (Bankr. W.D. Mo. 2006), which found the plain language of section 1325(b)(2) unambiguously indicated that prospective – not historical – expenses were to be used to calculate disposable income.

7

A different court came to an opposite conclusion in *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007). In that case the trustee opposed confirmation because the debtors' calculation of disposable income deducted mortgage payments they had stopped making on a home they intended to surrender. The bankruptcy court confirmed the plan over the trustee's objection, finding the debtors' disposable income calculation correct. The *Burmeister* court followed the reasoning of the majority of chapter 7 cases finding the surrender of collateral irrelevant to the determination of expenses included in the section 707(b)(2)(A)(iii)(I) analysis. *Id*. at 230. The court concluded that because the debtors were legally bound by the mortgage on the petition date, they were obligated to deduct those payments when calculating their disposable income on Form B22C. *Id*. The *Burmeister* court further found that the disposable income calculation is made as of the petition date, not the confirmation date. *Id*. at 231. The court concluded its analysis by suggesting the proper remedy would be for the trustee to file a post-confirmation motion for modification of the plan under section 1329(a). *Id.* at 232.

The cases cited above, and others that have addressed the issue, show the difficulty facing courts that are hard wired to come up with a common sense solution that will facilitate historical purposes of chapter 13, such as requiring debtors to pay creditors as much as possible while keeping homes and other secured assets necessary to sustain life and work. This general concept is not contrary to chapter 13 post-BAPCPA; it is just more difficult when rigid, but ambiguous or conflicting, statutory provisions are applied. Nevertheless, I am satisfied that "projected disposable income" is distinguishable from "disposable income," and "to be expended" is distinguishable from "contractually due." Interpreting application of expenses in a chapter 13 case differently from their use in a chapter 7 case does no disservice to established rules of

8

statutory construction.  *Cf. In re Mancl,* __ B.R. __, 2008 WL 370621 (W.D. Wis. Feb. 12, 2008) ("projected disposable income" is not an independent concept but is simply the debtor's "disposable income" projected for the term of the plan).  Chapter 13 continues to be forward looking in the statutory sense, as it must be, because in real life it will continue for up to five years after the date of filing.  As I stated in *In re Clark*, Case. No. 07-23390 (Bankr. E.D. Wis. February 14, 2008), in a slightly different context, the numbers referred to in 11 U.S.C. § 707(b)(2)(A)(ii) are useful because they are researched and updated regularly, but how they are used may vary in context.  The *Spurgeon* court similarly observed that "the statutes still identify the kinds of expenses that can be deducted and limit the deductible amounts," but application may be changed by future events.  *Spurgeon*, 378 B.R. at 203.  One such event in this case is the surrender of the mortgaged premises that greatly increases the debtor's ability to satisfy the claims of unsecured creditors.

Even the *Burmeister* court, which had held that Line 58, Form B22C was the amount debtors were required to pay unsecured creditors, noted that the trustee could move to modify the plan under 11 U.S.C § 1329(a)(1) to increase the amount to be paid to unsecured creditors. *Burmeister*, 378 B.R. at 231-32.  Since section 1325(b) is not one of the requirements for confirmation of a modified plan, and section 1325(b) is the section that incorporated the section 707(b)(2)(A) expenses, the court could then look at the debtor's actual ability to pay.  *See* 11 U.S.C. § 1329(b).  The motion for modification could come almost immediately after initial confirmation.  This strikes me as an unnecessary step to achieve the fair and practical result.  The "snapshot" number might be useful in determining issues that only need to be determined once, such as whether a presumption of abuse exists and how long the commitment period must be.  It

9

is not useful when it only creates trustee and court busywork to fix an obvious anomaly. Congress may have wanted to reduce the court's discretion, but this cannot be the intended exercise, particularly because it does not work. The United States Supreme Court has also indicated a disinclination to require vain procedural exercises. *See Marrama v. Citizens Bank of Mass.*, 127 S. Ct. 1105 (2007) (debtor does not have unrestricted right to covert a case to chapter 13, notwithstanding lack of restriction in statute, when no confirmable plan is possible).

That brings us to the trustee's argument that the debtor has not proposed his plan in good faith. The debtor's attempt to obtain the results offered by law, as opposed to manipulation of his circumstances to the unfair or wrongful detriment of creditors, are not the kind of bad faith contemplated by 11 U.S.C. § 1325(a)(3). In this respect, I agree with the district court in *In re Mancl*, __ B.R. __, 2008 WL 370621 (W.D. Wis. Feb. 12, 2008), which held that without such manipulation, any objection to the sufficiency of the debtor's chapter 13 plan payments had to be under the specific code provision applicable to the payment calculation, not the catch-all good faith provision. I am satisfied this plan was proposed in good faith, but the debtor's projected disposable income must be calculated without deduction for the mortgage on his surrendered house.

For the reasons discussed above, the trustee's objection is sustained. A separate order consistent with this decision will be entered.

February 27, 2008

                                          Margaret Dee McGarity
                                          Chief Judge, U.S. Bankruptcy Court